**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT ILLINOIS EASTERN DIVISION**

| | |
|---|---|
| Invent WorldWide Consulting, LLC An Illinois Limited Liability Company; Plaintiff, vs. AbsolutelyNew, Inc., a California Corp.; Jose Miguel Castello, Individually and d/b/a "SellMyInventionIdea.com"; Michael Torbert, Individually and d/b/a Semper Fi Web Design, and Unknown John Does; Defendants. | DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO REINSTATE THE DEFAULT<br><br>Case No.   11-CV-01619<br><br>Judge Rebecca Pallmeyer<br><br>Magistrate Judge Arlander Keys |

## I. INTRODUCTION

Defendants JOSE MIGUEL CASTELLO ("Castello") and ABSOLUTELYNEW, INC. ("ANI") submit this motion in opposition to Plaintiff, INVENT WORLDWIDE CONSULTING, LLC's ("IWC") motion to Reinstate the Default. Plaintiff's motion should be denied for failure to state a claim because a default cannot stand on a complaint that fails to state a claim. The Partial Default Judgment should be set aside to facilitate resolution on the merits.

Defendants would like to request the Court to disregard for the moment Defendants' Motion for Relief pursuant to FRCP Rule 55(c), and instead now consider this Opposition to Plaintiff's Motion to Reinstate the Default based on the 7th Circuit and other case law forbidding entry of default on a defective complaint.

Currently, the Court is preparing to vacate the default if Defendants pay $30,000 to the Plaintiff, pursuant to rule 55(c) to compensate any prejudice to Plaintiff's case for the delay caused by the default. This would be the case if Plaintiff had a well-pleaded complaint. However, in this case Plaintiff is not entitled to relief because the defects in the Complaint prevent a Default Judgment in its favor.

Plaintiff's pleadings contain defects that result in failure to state causes of action, so that vacating the default without having the Defendant pay the $30,000 amount will not cause any prejudice to Plaintiff's.

Defendants assert that under <u>Nishimatsu Constr. Co. Ltd. v. Houston Nat'l Bank,</u> 515 F.2d 1200, 1206 (5th Cir.1975), Plaintiff's defective pleadings cannot support a default judgment in its favor, and therefore Plaintiff's own defects to the pleadings bring about the denial of the motion. This is a rare circumstance because not only contested defaults are usually rare in most court proceedings, a contested default with a defective pleadings present is even more so.

Defendants are also aware the already significant judicial resources being used to resolve this controversy, and offer a remedy to a potentially save time and effort in litigating the matter from all sides. By denying Plaintiff's Motion to Reinstate the Default, Defendants can stand on their pending Motion to Dismiss for failure to state a cause of action pursuant to rule 12(b)(6). Plaintiff can amend the Complaint and allow this controversy to be tried on its merits.

In sum, as it stands this litigation is being distracted by procedural and technical defects that are using precious judicial resources for technicalities rather than on the merits. Defendants' late response is a serious mistake, but that does not overshadow Plaintiff's deficient Complaint upon which no default or judgment can be granted.

## II. <u>ARGUMENT</u>

**A. Plaintiff's Motion to Reinstate the Default Should be Denied for Failure of the Complaint.**

It is axiomatic that a default judgment cannot be entered on a Complaint based on allegations that fail to state a cause of action. "Claims that are legally insufficient are not established by default." <u>Cripps v. Life Insurance Company of No. Amer</u>. 980 F.2d. 1261, 1267 (9th Cir. 1992).

A default judgment is unassailable on the merits but only so far as it is supported by *well-pleaded* allegations, assumed to be true. Thomson v. Wooster, 1884, 114 U.S. 104, 5 S.Ct. 788, 29 L.Ed. 105. As the Supreme Court stated in the "venerable but still definitive case" of Thomson v. Wooster: a default judgment may be lawfully entered only "according to what is proper to be decreed upon the statements of the bill, assumed to be true," and not "as of course according to the prayer of the bill." 114 U.S. at 113, 5 S.Ct. at 792, 29 L.Ed. at 108. The defendant is not held to admit facts that are not *well-pleaded* or to admit conclusions of law. In short, despite occasional statements to the contrary, a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover. Thomson v. Wooster; 10 Wright & Miller, Federal Practice and Procedure 282.

When a defendant fails to respond to a complaint against it, the plaintiff is entitled to the entry of default. A default is not, however, "an absolute confession by the defendant of his liability and of the plaintiff's right to recover." *Nishimatsu Constr. Co. Ltd. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir.1975). Instead, the failure to respond operates only as an admission of the well-pleaded factual allegations contained in the complaint. *Id.* Those allegations must still provide a legitimate basis for the entry of judgment. Consequently, even after default, a defendant is still entitled to challenge the legal sufficiency of the complaint and whether its allegations state a claim upon which judgment may be entered. *Id.* at 1206-07. *See also Danning v. Lavine,* 572 F.2d 1386, 1388 (9th Cir.1978). If the well-pleaded allegations, which are deemed to have been admitted by the defaulting defendant, do not support the entry of judgment, judgment cannot be entered.

Thus, while the factual allegations in the complaint may be taken as true, in passing upon a request for a default judgment the court, nonetheless, has an independent obligation to examine those facts and to satisfy itself that the proper legal standards for the entry of judgment are met. *Weft, Inc. v. G.C. Inv. Assocs.,* 630 F.Supp. 1138, 1141 (E.D.N.C.1986), *aff'd subnom Weft, Inc. v. Georgaide,* 822 F.2d 56

(4th Cir.1987) (Text in Westlaw); *In re Wall,* 127 B.R. 353, 355 (Bankr.E.D.Va. 1991); *see also* *GMAC Commercial Mortg. Corp. v. Maitland Hotel Assocs. Ltd.,* 218 F. Supp. 2d 1355, 1359 (M.D. Fla. 2002) ("A default judgment cannot stand on a complaint that fails to state a claim.") (citations omitted).

In addition, the recent Supreme Court decisions in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) and *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) heightened the burden on Plaintiff's for proper pleading causes of action. A "plaintiff's obligation to provide the grounds for his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly,* 550 U.S. at 555. Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." *Iqbal,* 129 S. Ct. at 1949, 1951. Thus, in ruling on a motion for final default judgment, the Court must determine whether a sufficient factual basis exists in the complaint for a judgment to be entered. *See Nishimatsu,* 515 F.2d at 1206.

In this case, Plaintiff fails to meet the elements of the claims alleged in Plaintiff's original complaint as discussed below.

> **B. The Entire Complaint Must Be Dismissed For Failure to State Any Cause of Action Upon Which Relief Can Be Granted.**

Plaintiff fails to allege the elements necessary to support any of the purported counts in Plaintiff's Complaint as discussed below.

# 1. All Counts – No Facts Alleged to Show ANI's Alleged Role in the Website from Possible to Plausible

The recent Supreme Court decisions in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) and *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) heightened the burden on Plaintiff's for proper pleading causes of action. A "plaintiff's obligation to provide the grounds for his entitlement to relief requires factual support and more

than labels and conclusions. A formulaic recitation of the elements of a cause of action will not do[.]" *Twombly* at 555. Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." *Iqbal* at 1951. Under the *Twombly/Iqbal* standard, a plaintiff has to do more beyond the notice pleading requirement standard set forth in Fed R. Civ. P. 8(a)(2), and actually present allegations that are factually plausible for the defendant to be forced to respond to the allegations.

The allegations of all counts of Plaintiff's Complaint fail under the *Twombly* standard because almost all of the "General Allegations Common to All Counts" are pled "On information and belief." (See, e.g., paragraphs 5 through 21, 32 – 35, 38, and 42-49.) Paragraph 44, which contains the only allegations of deception and confusion regarding the website, is pled on information and belief. Pleading in this fashion evidences a lack of investigation and/or a lack of the factual support required under the *Twombly* and *Iqbal* standard.

In the wake of *Twombly* an *Iqbal* the courts have held that pleading "on information and belief" is allowed, but only if the remaining (non-information & belief) allegations, standing alone, can satisfy the plausibility requirement. See *Arista Records, LLC v. Doe 3*, (7th Cir.) 604 F.3d 110, 120 (2010). The Court in *Arista Records* held that "conclusory allegations on information and belief that the observed conduct was the product of unlawful behavior are not sufficient to make the claim plausible." *Twombly* at 556-57, 127 S. Ct. 1955, *Arista Records LLC*. at 120.

The Court in *Twombly* said that plaintiffs' allegations there of parallel conduct were "consistent with conspiracy, but just as much in line with a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market." *Twombly,* 550 U.S. at 554, 127 S.Ct. 1955. The Court found this insufficient to defeat a motion under Rule 12(b)(6). *Id.* As in Twombly, IWC's allegations that Defendants are employer and employee are not sufficient to support the bare allegation that Defendant AbsolutelyNew, Inc. owned or controlled Defendant Castello's website.

In *Iqbal,* the Court analyzed the facts alleged by the respondent in the case did not meet the plausibility standard as set forth in *Twombly* as follows:

> [T]he respondent's constitutional claims against petitioners rest solely on their ostensible "policy of holding post-September-11th detainees" in the ADMAX SHU once they were categorized as "of high interest." To prevail on that theory, the complaint must contain facts plausibly showing that petitioners purposefully adopted a policy of classifying post-September-11 detainees as "of high interest" because of their race, religion, or national origin…
>
> … [A]ccepting the truth of that allegation, the complaint does not show, or even intimate, that petitioners purposefully housed detainees in the ADMAX SHU due to their race, religion, or national origin. All it plausibly suggests is that the Nation's top law enforcement officers, in the aftermath of a devastating terrorist attack, sought to keep suspected terrorists in the most secure conditions available until the suspects could be cleared of terrorist activity. Respondent does not argue, nor can he, that such a motive would violate petitioners' constitutional obligations. He would need to allege more by way of factual content to "nudg[e]" his claim of purposeful discrimination "across the line from conceivable to plausible."

*Iqbal* at 1952.

The same is true here. In paragraph 44, Plaintiff alleges <u>on information and belief</u>, that "Defendants' website is intended to deceive and confuse consumers in that (a) the website does not identify AbsolutelyNew as the source of the information; (b) the website does not identify the source of the information at all, and (c) the website claims to be "purely for informational purposes" at the bottom of every page where, in fact, the purpose of the site is to drive Internet traffic to Defendants' site or to otherwise profit Defendants." These alleged facts raise the possibility that ANI owned a website that intended to confuse and deceive consumers. However, it is equally or more likely that ANI is not identified as the source of the information, etc., because ANI had nothing to do with Defendant Castello's web page to begin with.

On paragraph 7, Plaintiff alleges on information and belief that ANI owns and operates an interactive website. On paragraph 11, Plaintiff alleges on information and belief defendants ANI and Castello own and operate the website, www.sellmyinventionidea.com. However, Plaintiff never alleges any facts to support

an allegation that ANI owns www.sellmyinventionidea.com. In reality, the interactive website that ANI owns and operates is www.absolutelynew.com, and not www.sellmyinventionidea.com.

Plaintiff's allegations of ANI's ownership of www.sellmyinventionidea.com arises from a fallacious assumption that if Castello owns and operates the offending website, and that if Castello is employed by ANI, then it follows that ANI owns and operates the website. This assumption does not meet the plausibility requirements of *Twombly/Iqbal* because everything that Plaintiff alleges is the mere possibility that ANI may own and operate www.sellmyinventionidea.com. This fails the plausible standard because the facts Plaintiff alleged can also be explained by ANI not owning and operating the website and there is no indication on the website that ANI owns or operates said website.

This is very similar to *Twombly*, where the allegations of the Defendant's action suggesting a conspiracy was contrary to the Defendant's apparent economic interests, and therefore does not raise an inference that the actions were a result of a conspiracy. *Twombly* at 557.

ANI asserts that there are no facts to support the allegations because the facts do not exist – the allegations are simply not true. Plaintiff will be likely to respond that it cannot plead sufficient facts because the facts have not been discovered yet. However, it is clear that the Supreme Court wants to avoid fishing expeditions like IWC's. As the Court describes clearly in *Twombly*:

> "We alluded to the practical significance of the Rule 8 entitlement requirement . . . when we explained that something beyond the mere possibility of loss causation must be alleged, lest a plaintiff with a largely groundless claim be allowed to take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value. So, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court. Some threshold of plausibility must be crossed at the outset before a . . . case should be permitted to go into its inevitably costly and protracted discovery phase.
>
> Thus, it is one thing to be cautious before dismissing [a] complaint in advance of discovery, but quite another to forget that proceeding to

antitrust discovery can be expensive. As we indicated over 20 years ago, a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Twombly* at 557-558, emphasis in original.

The answer is not to let the complaint proceed against a Defendant in the hopes that some hypothetical facts will be uncovered during a fishing expedition. Instead, ANI should be dismissed from the action, and the cause may continue against Castello, because Plaintiff can properly allege that Defendant Castello owns the website. Then Plaintiff may conduct discovery in that case to determine whether there are any facts to back its theories about ANI's involvement.

Similar to what the Court faced in both *Twombly* and *Iqbal*, the facts alleged by the Plaintiff only raise the possibility that ANI is culpable, but it is not plausible on the face of the complaint that ANI is actually culpable. The facts alleged in paragraph 44 of Plaintiff's complaint can also be reasonably interpreted to mean that ANI does not own or operate the website just because the website does not identify ANI as the owner or fail to mention ANI's complaints at the USPTO site.

Another defect that permeates the Complaint is that it is structured with a slew of allegations alleged "on information and belief" that purport to be common to all counts, followed by conclusory recitation of most of the elements and damage claims for each of the five counts. A "plaintiff's obligation to provide the grounds for his entitlement to relief requires factual support and more than labels and conclusions. A formulaic recitation of the elements of a cause of action will not do[.]" *Twombly* at 555. Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." *Iqbal* at 195.

There is no way for Defendants to determine which general allegations IWC meant to support which cause of action. The disorganized non-chronological organization of the General Allegations provides no guidance. Neither is the General Allegations organized by count or cause of action. This failure to link the facts to the

conclusory elements of the causes of action "will not do" under *Twombly*. *Twombly* at 555. These defects infect the entire Complaint and prevent it from properly stating any causes of action under FRCP Rule 8 and all counts should be dismissed under FRCP Rule 12(b)(6).

## 2. Trademark Infringement Count Fails

Count 1 of the complaint alleges trademark infringement under the Lanham Act, 15 U.S.C § 1114(1), which prohibits in relevant part:

> "...use in commerce [of] any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive...."

In order to state a claim for trademark infringement under the Lanham Act, the plaintiffs must plead that (1) its mark is protectible, and (2) defendant's use of the mark is likely to cause confusion among consumers. *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001).

In this case, Plaintiff fails to plead of a trademark infringement claim because defendant's use of the mark does not cause confusion nor likely to cause confusion among consumers.

The use of Plaintiff's logo throughout Defendant Castello's website is strictly to identify Plaintiff's services. There is no evidence of Plaintiff's mark being used in a manner that a potential consumer who visits the website will confuse Plaintiff's services with either of Defendants' services when the consumer sees the mark as depicted on the web page. Plaintiff's logo and business name is used strictly to identify Plaintiff's business services and to link Plaintiff's home page as a reference for Defendant Castello's opinion of Plaintiff's business services. Additionally, Defendant ANI's logo is very distinct and different compared to Plaintiff's logo, and

both are displayed in the same web page on Defendant Castello's website. It is highly unlikely a potential consumer will confuse Defendant ANI's mark with Plantiff's mark upon reviewing Defendant Castello's web page.

Because there is no likelihood of confusion present in the use of Plaintiff's mark by Defendant Castello, Plaintiff's trademark infringement claim must fail because there has been no infringing use of Plaintiff's mark by defendant Castello.

Plaintiff has also failed to plead any claim of trademark dilution under 15 U.S.C. § 1125(c), which provides protection only to "the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness . . ." We need not decide whether the claimed mark actually is famous and distinctive, because Plaintiff has failed to allege these facts at all. Although Plaintiff alleges that the value of its mark has been diminished, it has failed to allege that its mark is famous and distinctive under the Act. A count for trademark dilution is not, therefore, stated.

a. Fair Use.

In addition to the deficiencies set forth above, the Trademark Infringement count fails to consider or anticipate the complete affirmative defense of Fair Use. In *Lenz v. Universal Music Corp.*, 572 F. Supp. 2d 1150 (2008), the court held that copyright holders must consider fair use before issuing takedown notices for content posted on the internet.

In *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786 (5th Cir. 1983), the court noted that "[t]he defense is available only in actions involving descriptive terms and only when the term is used in its descriptive sense rather than its trademark sense." 698 F.2d at 791 (citing *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1185 (5th Cir. 1980). Because the use of Plaintiff's mark is merely for descriptive use, under the standards set out by *Twombly*, and *Iqbal*, and progeny, a Plaintiff must consider and negate Fair Use in the allegations of its complaint. Plaintiff has failed to do so here and cannot do so for the reasons set forth below.

Under trademark law, even a competitor may use a trademarked name to identify the competitor's products or services as long as it is not false or misleading. 15 U.S.C. §1115(b)(4). However, the use is limited to only so much of a trademark as necessary to allow the audience to identify the entity being discussed. Under this rule, use of the name of Plaintiff, Invent Worldwide Consulting, would clearly be permitted to identify IWC as the subject of Castello's review on his website.

As gleaned from the Complaint Exhibits C through K, there are many other invention assistance companies with confusingly similar names like InventSAI, InventHelp, Invention Home, America Invents and Patent Assistance Worldwide. Plaintiff's logo, and the logos of the other companies, as used on Castello's website was necessary to distinguish IWC from the other companies reviewed.

Each use of a trademark on the subject website was used to identify the trademark owner. Marks used in this fashion are not used to identify the source of goods or services, so there is no potential for consumer confusion. Castello also posted a disclaimer on the bottom of each page of the website: "This website on invention ideas is purely for informational purposes. Depiction of any trademarks/logos does not represent endorsement or affiliation for the services, or products by the trademark owner." Complaint Exhibits C through K.

On the face of the Complaint, one can see that Castello's use was fair and not misleading. All of the links on the website went to the site of the trademark owner, so that no web traffic was diverted at all. Thus, use alleged is not infringing and the trademark infringement count fails to state a cause of action upon which relief can be granted.

Furthermore, the Digital Millennium Copyright Act (DMCA) expressly states that DMCA takedown notices are <u>only proper for copyright holders</u> who need to protect their rights against online copyright infringers. 15 U.S.C. § 512(c). As discussed below, IWC does not hold any enforceable copyrights in the material on Castello's website. Only copyrights and not trademarks are protected by DMCA. Therefore, Plaintiff's

February 25, 2011 takedown notice to Castello's website hosting company, www.bluehost.com (described in ¶ 46 of the Complaint) was made for purposes other than combatting copyright infringement. This constitutes a bad-faith DMCA takedown notice for which Plaintiff may be liable for all damages, including costs and attorneys' fees incurred by the alleged infringer under 15 U.S.C. § 512(f) when Plaintiff knowingly or materially misrepresents the merits of the takedown notice.

### 3. Copyright Infringement Count Fails

Plaintiff has not alleged the necessary elements of a copyright infringement claim. Copyright registration is a prerequisite to a suit to enforce a copyright. More precisely, an application to register must be filed, and either granted or refused, before suit can be brought. 17 U.S.C. § 411(a).

Plaintiff has not alleged filing a copyright registration or a grant of copyright for all the materials Plaintiff alleges to have been infringed by the Defendants. Plaintiff has not alleged ownership of copyright to the contents of the website, so therefore the copyright count fails to state a cause of action upon which relief can be granted.

As a general matter, a plaintiff asserting copyright infringement must prove: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). Furthermore, under copyright law, copyrights are a form of protection for the authors of "original works of authorship," which includes works of literary, dramatic, musical, artistic, and certain other creative works.

Copyright law does not cover intellectual property such as titles, names, short phrases, and familiar symbols or designs, or mere variations of typographic ornamentation, lettering or coloring. These types of intangible property are protected under trademark law.

A trademark protects a word, phrase, symbol or design (or a combination of these), that identifies and distinguishes the goods or services of one person or company from those of others.

Plaintiff alleges Defendants have used copyrighted material, specifically words, pictures and graphics from Plaintiff's website. However, following the definition of the works protected under both copyright and trademark laws, it is clear that what is used on Defendant's webpage does not qualify for copyright protection for two reasons.

First, the banner, logo and title of Plaintiff's business name are not protected under copyright law because they are not "original works of authorship" as defined under copyright law, but rather they are marks to identify Plaintiff's services as defined under trademark law.

Second, the words of testimonials of satisfied clients are not protected under copyright law because they are statements made by Plaintiff's satisfied clients, and therefore Plaintiff is not the author of these statements. However, if Plaintiff claims that these are indeed copyrightable, then as a logical conclusion Plaintiff is indeed the author of these statements and not Plaintiff's clients, which means Defendant Castello's opinion of the statements becomes a factual matter as admitted by Plaintiff when claiming copyright ownership of the statements.

Because Plaintiff has not alleged any copyrightable works that was used by Defendant Castello on his website, plaintiff has not met the requirements of a copyright infringement cause of action and therefore the claim must be dismissed.

Finally, Plaintiff may indeed be liable under 15 U.S.C. § 512(f) when it sent a bad-faith takedown notice to Defendant's webhosting service. As previously discussed, a takedown notice is proper for a copyright holder to notify an online service provider that it is hosting an infringing content, and the service provider may avoid liability by taking down the allegedly infringing content. 15 U.S.C. § 512(c).

However, if the takedown notice is made in bad-faith, that is, other purposes than to protect one's copyright ownership, the sender may be liable for any damages incurred by the alleged infringer and the online service provider, including attorney fees and costs. 15 U.S.C. § 512(f). See also *Lenz v. Universal Music Corp.*, 572 F. Supp. 2d 1150 (2008), where the court held that copyright holders must consider fair use before issuing takedown notices for content posted on the internet. It is simple to determine that Plaintiff does not own a copyright to the content on Defendant Castello's website, and therefore the takedown notice was made in a bad faith manner.

4. <u>Unfair and Deceptive Business Practices Count Fails</u>

Both state and federal laws regulate deceptive advertising. The Lanham Trademark Act, 15 U.S.C.A. section 1051, regulates false advertising at the federal level, while many states have adopted the Uniform Deceptive Trade Practices Act (UDTPA), which prohibits three specific types of representations: (1) false representations that goods or services have certain characteristics, ingredients, uses, benefits, or quantities; (2) false representations that goods or services are new or original; and (3) false representations that goods or services are of a particular grade, standard, or quality.

Claims that allege false advertising under the Lanham Act are subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b). *CardioNet, Inc. v. LifeWatch Corp.,* No. 07-C-6625, 2008 WL 567031, at 2 (N.D. Ill. Feb. 27, 2008). No such specificity such as the particular acts, actors, dates, communication are identified as related to the fraud allegations on the face of Plaintiff's complaint for this cause of action. Thus, Plaintiff's cause of action does not meet both the *Iqbal/Twombly* standard of plausibility and rule 9(b) heightened pleading standards, and therefore must be dismissed.

In *Hot Wax, Inc. v. Turtle Wax, Inc.,* 191 F.3d 813 (7th Cir.1999), the Seventh Circuit described the five elements that must be proved to establish a claim of false advertising under the Lanham Act:

> "(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a loss of goodwill associated with its products." *Id.* at 819.

A false statement that constitutes a violation of the Lanham Act "generally falls into one of two categories: (1) commercial claims that are literally false as a factual matter; or (2) claims that may be literally true or ambiguous, but which implicitly convey a false impression, are misleading in context, or likely to deceive consumers." *Id.* at 820. "When the statement in question is actually false, the plaintiff need not show that the statement either actually deceived customers or was likely to do so." *Id.* When the statement is literally true or ambiguous, the plaintiff must prove that the statement is misleading in context by demonstrated actual consumer confusion. *Id.*

Plaintiff's cause of action for false advertising must fail because the Exhibits C through K show on the face of the Complaint that Defendant's website does not falsely misrepresent Plaintiff's services. Plaintiff has not alleged Defendant's statements to be false or misleading. Defendant Castello's statements on the website are plainly not advertisement for any goods or services. No goods or services are available on the site. The site is not interactive – there is no forum or place for viewers to leave comments. The statements on the site are clearly expressions of an opinion of Plaintiff's quality of service. In addition, Defendant Castello's statements can be determined to be true on the face of the Complaint based on Plaintiff's admission that it was "established in June 2010" (Complaint at paragraph 22) and the

website testimonial's claim of a three year relationship with Plaintiff (Complaint at paragraph 29).

5. **Illinois Consumer Fraud And Unfair Business Practices Act Fails**

Plaintiff also alleges Defendants actions violate the Illinois Consumer Fraud and Deceptive Business Practices Act (Illinois Consumer Fraud Act) and the Illinois Uniform Deceptive Trade Practices Act. The Consumer Fraud Act does not apply to "fraudulent transactions which take place outside Illinois." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill.2d 100, 296 Ill. Dec. 448, 835 N.E.2d 801, 850 (2005). As a matter of statutory interpretation, the Illinois Supreme Court has held that "a plaintiff may pursue a private cause of action under the Consumer Fraud Act if the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois." *Id.* at 854. The Illinois Supreme Court further "recognize[d] that there is no single formula or bright-line test for determining whether a transaction occurs within this state" and that "each case must be decided on its own facts." *Id.*

In *Avery,* the Illinois Supreme Court addressed whether a class of insureds, who were challenging the defendant's practice of using non-OEM crash parts to repair policyholders' cars, could sue under the Consumer Fraud Act. It concluded that because the "overwhelming majority of circumstances relating to the disputed transactions in this case — State Farm's claims practices — occurred outside of Illinois for the out-of-state plaintiffs[,]" they "have no cognizable cause of action under the Consumer Fraud Act." *Id.*

"Obviously, at this stage of the proceedings, any in-depth factual inquiry is inappropriate. Rather, the Court must look to whether the allegations of the complaint are factually sufficient such that one could plausibly conclude that the circumstances that relate to the disputed transaction (i.e., the alleged deceptive domain scheme) occurred primarily and substantially in Illinois. Plaintiff has not alleged that Defendants' actions occur primarily and substantially in Illinois." *Vulcan Golf, LLC v. Google Inc.*, 552 F.Supp.2d 752 (N.D. Ill. 2008) Therefore Plaintiff's

pleading for the Consumer Fraud Act count fails to state a cause of action upon which relief can be granted.

Plaintiff's allegations of fraudulent conduct under the Act (Complaint at paragraph 79) must be pled with heightened particularity as required under FRCP 9(b). *Costa v. Mauro Chevrolet, Inc.*, 390 F.Supp.2d 720, 731 (N.D. Ill. 2005) ("A complaint alleging a violation of the Illinois [Consumer] Fraud Act must be pled with the same particularity and specificity as that required under common law fraud under Rule 9(b).") Similar to the Lanham Act claim, no such specificity such as the particular acts, actors, dates, communication are identified as related to the fraud allegations. For this reason, as well, the count fails.

Defendant seeks dismissal this count on two bases: (1) that plaintiff is not a "consumer" and therefore lacks standing to assert a claim under ICFA unless plaintiff pleads sufficient facts to meet "the consumer nexus test"; and (2) even if plaintiff had standing, the Complaint does not plead with sufficient particularity to satisfy the requirements of Rule 9(b).

To state a claim under the ICFA, the complaint must allege: (1) a deceptive act or practice by defendant; (2) defendant's intent that plaintiff rely on the deception; (3) the occurrence of the deception in the course of conduct involving trade or commerce; and (4) actual damage to plaintiff; (5) proximately caused by the deception. *Freedom Mortgage Corp.*, 720 F.Supp.2d at 1003 (citing *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 180, 835 N.E.2d 801, 296 Ill. Dec. 448 (Ill. 2005)).

A corporation may assert claims under ICFA even if they are not "consumers" of the defendant's products if they meet the "consumer nexus test." Id. at 1004. Under the "consumer nexus test," plaintiff must allege facts showing the conduct involves trade practices directed to the market generally or otherwise relates to consumer protection issues. *Petri v. Gatlin*, 997 F.Supp. 956 (N.D.Ill. 1997); *Athay Products Corp. v. Harris Bank Roselle*, 89 F.3d 430, 437 (7th Cir. 1996). "To sufficiently

establish an implication of consumer protection concerns, [a plaintiff] must plead and otherwise prove (1) that [its] actions were akin to a consumer's actions to establish a link between [it] and consumers; (2) how defendant's representations . . . concerned consumers other than [plaintiff]; (3) how defendant's particular [action] involved consumer protection concerns; and (4) how the requested relief would serve the interests of consumers." *Brody v. Finch Univ. of Health Sciences/The Chicago Medical School*, 298 Ill.App.3d 146, 161 698 N.E.2d 257, 232 Ill. Dec. 419 (2 Dist. 1998).

Plaintiff merely alleges the general statement of facts has sufficient consumer nexus to protect the consumer against the fraudulent advertising and business practices of the Defendant (Paragraph 79). Plaintiff has not sufficiently alleged (1) that its actions were akin to a consumer's actions to establish a link between it and consumers; (2) how Defendant's representations concerned consumers other than plaintiff; (3) how Defendant's particular action involved consumer protection concerns; and (4) how the requested relief would serve the interests of consumers on the face of its complaint.

### 6. Trade Defamation Count Fails

Trade defamation is a close relative of false advertising. The law of false advertising regulates inaccurate representations that tend to mislead or deceive the public. The law of trade defamation regulates communications that tend to lower the reputation of a business in the eyes of the community. A species of tort law, trade defamation is divided into two categories, libel and slander.

Trade libel generally refers to written communications that tend to bring a business into disrepute, while trade slander refers to defamatory oral communications.  Here, in this case, Plaintiff has not alleged that any of Defendant Castello's statements on the website are in fact false - a necessary element in a defamation cause of action.  Although some of Plaintiff's pleadings to date discuss falsity as if it is alleged somewhere in the Complaint, no citations are provided and

examination reveals that allegations of falsity are completely lacking in this Complaint.

Additionally, the complete defense of truthfulness of the alleged defamatory statements is established on the face of the Complaint as discussed at the Unfair and Deceptive Business Practices Count discussion, above. Therefore, Plaintiff has not properly alleged any defamatory statements and therefore fails to plead a cause of action upon which relief can be granted.

### III. CONCLUSION

For the foregoing reasons, Defendants asserts that IWC cannot obtain a Default or Judgment based on the current Complaint. Plaintiff must amend to have any hope of doing so. Defendants cannot be responsible for any delay to IWC in its futile pursuit of a Default Judgment. Once IWC amends, Defendants will be able to timely respond to the Amended Complaint and this action will be back on track.

Respectfully Submitted,

Dated: September 14, 2011

                                                      COUNSEL FOR DEFENDANTS
JOSE MIGUEL CASTELLO AND
ABSOLUTELYNEW, INC.

                              _____/s/_____
Anthony R. Flores
AbsolutelyNew, Inc.
tflores@absolutelynew.com
650 Townsend Street, Suite 475
San Francisco, CA 94103
(415) 865-6200 ext. 1123

## **PROOF OF SERVICE**

      I am employed in the City and County of San Francisco, State of California. I am over the age of eighteen years and not a party to the within action; I am employed by AbsolutelyNew, Inc. and our business is located at 650 Townsend Street, Suite 475, San Francisco, California 94103.

      On September 14, 2011, I caused to be served a true and correct copy of: **DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO REINSTATE THE DEFAULT** on Plaintiff by placing a true and correct hard copy thereof enclosed in via sealed envelope to the addressed as follows:

Robert W. Gray, Sr.
The Gray Law Group, Ltd.
9219 S. Indianapolis Blvd., Suite A
Highland, Indiana 46322
Fax: (866) 277-8885 Email: robertgray2@gmail.com

___    (BY MAIL) The envelope was mailed with postage thereon fully prepaid U.S. Mail. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. It is deposited with U.S. Postal Service on that same day. I am aware that on motion of a party served, service is presumed invalid if the postal cancellation date is more than one day after date of deposit for mailing an affidavit.

___    (BY PERSONAL SERVICE) I delivered such envelope by hand to the office of the addressee listed above.

___    (BY EXPRESS MAIL/OVERNIGHT DELIVERY) I deposited the foregoing during normal business hours with an authorized service providing and ensuring overnight delivery of the foregoing and with the full postage or charges for such fully prepaid

XX    Via E-Mail to the e-mail address of the addressee listed above in the CM/ECF electronic filing system of the U.S. District Court.

___    Via Facsimile to the fax number of the addressee listed above.

XX    (FEDERAL) I declare that I am a member of the bar of the Federal court.

Date: September 14, 2011              /s/
                                                    Anthony R. Flores